**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| SAMUEL GRAY and RACHEL HINKLE GRAY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 3:26-cv-00381 |
| AMERIS BANK; DOVENMUEHLE MORTGAGE; ANDREW JENSEN; and JOHN DOES 1-10 | ) ) ) ) | |
| Defendants. | ) ) | |

<u>**MEMORANDUM OF LAW BY AMERIS BANK AND DOVENMUEHLE MORTGAGE, INC. IN SUPPORT OF THE MOTION TO DISMISS**</u>

**I. INTRODUCTION**

This matter appears to be nothing more than an improper attempt to delay eviction and reverse a completed foreclosure by the Plaintiffs, who by their own admission were in default and could not come up with a feasible plan by which to remain in the home.

Procedurally, this matter began long before the Plaintiffs filed a post-foreclosure request for a temporary restraining order on January 22, 2026 in the Montgomery County Chancery Court. The Plaintiffs fell into default when they stopped paying their house note in December of 2024, and Ameris Bank began foreclosure proceedings. Samuel Gray filed for Chapter 13 bankruptcy protection on May 23, 2025, Case No. 3:25-bk-02177 (Bankr. M.D. Tenn.). Ameris filed a proof of claim on July 31, 2025, showing that the Plaintiffs owed at that point arrearages in the amount of $27,362.78 in order to cure their default. *Id.*, at Claim No. 10.

Yet even before the proof of claim was filed, Chapter 13 Trustee Henry E. Hildebrand, III had filed a motion to convert the Chapter 13 bankruptcy to a Chapter 7 on or around July 15, 2025, upon

the grounds that the debtor claimed he was getting a tax refund in the amount of $734,591.81, yet surprisingly made no monthly payments to the Chapter 13 Trustee from the inception of his filing. Hildebrand also mentioned the fact that the Plaintiffs had conveyed the Property to a trust. *Id.* at ECF No. 29. Likely the conveyance to the trust was a mistaken belief that the Property could be shielded from creditors, or that the indebtedness could be absolved, by simply putting the Property in trust.

The Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy on August 12, 2025, with the Bankruptcy Court highly skeptical of the Debtor's representation to the Court that he was getting a tax refund of nearly three-quarters of a million dollars. *Id.* at ECF No. 34.

Ameris moved on August 26, 2025 for a relief of the bankruptcy stay so that it could proceed to foreclosure of the Plaintiffs' home ("the Property") at 954 Terrace Creek, Clarksville, TN 37040. *Id*. at ECF No. 47. Relief from stay was granted to Ameris on September 5, 2025 by U.S. Bankruptcy Judge Nancy B. King. *Id.*, at ECF Doc. 58.

Unsurprisingly, once the Debtor realized that the bankruptcy would not shield him from foreclosure, he lost interest in completing the Chapter 7 bankruptcy, and it was dismissed without discharge on November 14, 2025. *Id.*, at ECF Doc. 67.

The Plaintiffs then, despite their representation in the previously described Chapter 7 bankruptcy that they were due to receive hundreds of thousands of dollars in a tax refund, filed for a loan modification, which was, unsurprisingly, denied, which they have admitted. *See Defendants' Removal Exhibit B-1* at ECF Doc. 296-1, Page 4, 9. Plaintiffs hastily applied again, mistakenly thinking they could keep the foreclosure process eternally in limbo with successive, frivolous loan modification applications.

The foreclosure process itself was rather routine. Once the relief of stay of execution in the Samuel Gray bankruptcy was granted, the foreclosure trustee, Mackie Wolf Zientz & Mann P.C. ("MWZM"), followed the nonjudicial foreclosure process as contractually agreed in the Plaintiffs' Deed of Trust and the statutory process outlined in T.C.A. § 35-5-101 et seq. The Plaintiffs were sent a notice of sale and one postponement notice due to the fact that they had applied for the loan modification. The Property was then foreclosed on January 8, 2026, and the substitute trustee's deed was recorded on January 13, 2026. *Defendants' Removal Exhibit B-7* at ECF Doc. 296-1 at Page 45.

## II. PROCEDURAL BACKGROUND

More than a week after the substitute trustee's deed had been recorded and around two weeks after the foreclosure sale, the Plaintiffs filed a motion for a temporary restraining order, without also filing a complaint, asking for the sale to be stopped. Defendants responded to the petition for the restraining order, pointing out all of the deficiencies with the filing, including the mootness of asking for a sale to be set aside that had already occurred, the fact that the petition clearly had not been filed in compliance with T.C.A. § 29-23-201, and the fact that it had not been accompanied by a complaint. *Id.* at ECF Doc. 296-1 at Pages 41-43. Nevertheless, the Montgomery Chancery Court did not dismiss the petition. Instead, the Plaintiffs, after reading the Defendants' response to their petition, hastily attempted to correct all of the deficiencies *ex post facto*. A complaint, verified only by a signature under penalty of perjury, was filed on March 12, 2026. However, the Plaintiffs did not comply with Tennessee Rule of Civil Procedure 5.03. No certificate of service or any other proof of service was attached. *Defendants' Removal Exhibit B-9* at ECF Doc. 296-1 at Pages 52-56.

MWZM appeared in person at a hearing in the Montgomery Chancery Court on March 25, 2026 for the Defendants. Despite being clearly noncompliant with the Montgomery Chancery

Memorandum of Law in Support of MTD      Page 3
25-000043-391

Court's requirement of filing notice of virtual appearance five days prior to a hearing date, nevertheless the Chancellor allowed one of the Plaintiffs to appear virtually. *Defendants' Removal Exhibit B-14* at ECF Doc. 296-1, Page 75-76. Plaintiff Rachel Hinkle Gray at that hearing stated her sole grounds of complaint, that she had not received any notice of the postponement. Her testimony was, unsurprisingly, contradictory to her stated goals. She admitted to unemployment, yet claimed she would have had a viable loan modification application. She claimed that an employee of MWZM had told her that they had sent the last notification to her on October 27, 2026, as her smoking gun that the postponement notices had not been sent. The MWZM attorney appearing in person presented to the Court the documentary evidence showing that MWZM did in fact send notices to the Plaintiffs on October 27, 2026—the very postponement notices complained of. *Defendants' Removal Exhibit B-23* at ECF Doc. 296-1, Pages 111-139. The Court entered an Order on March 26, 2026 dissolving the temporary restraining order it believed to be in existence, and finding, which should be a matter of *res judicata* for the removed action, that proper notice of the sale was given by the foreclosure trustee, and that the Plaintiffs had not complied with T.C.A. § 29-23-201. *Defendants' Removal Exhibit B-24* at ECF Doc. 296-1, Pages 140-141.

Unsurprisingly, unsatisfied with the outcome of the hearing held on March 25, 2026, Plaintiffs then filed an assortment of frivolous and feverishly contrived filings attempting to further stymie the owner of the Property from taking possession. Defendants then removed the action to the Middle District of Tennessee. As a final attempt to block the owner of the Property from taking possession, Rachel Hinkle Gray filed for a Chapter 13 bankruptcy on March 26, 2026, No. 3:26-bk-01403 (Bankr. M.D. Tenn.). In the Chapter 13 Plan she filed, she attempted to put the now foreclosed home in her plan, claiming an arrearage of $77,000 and also claiming that the house payment was $1583.33, while the proof of claim filed in the Samuel Gray bankruptcy established

that the monthly house payment actually has ranged from $3735.12 to $3768.28.  *Id.* at ECF Doc. 13.  She also failed to disclose the fact that she filed the Complaint on her Statement of Financial Affairs for Individuals Filing for Bankruptcy.  *Id.* at ECF Doc. 12.  Likely the Debtor is unaware of the control that the Chapter 13 Trustee (or Chapter 7 Trustee in the event of conversion) will have in resolving this matter.  The Chapter 13 Trustee will be sent a courtesy copy of these pleadings pending development of the Debtor's Chapter 13 case.

### III. STANDARD OF REVIEW

A complaint cannot survive a Rule 12(b)(6) motion unless the allegations within it "are enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*  A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient.  *Id*. at 678; *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).  Bare assertions, formulaic recitation of the elements, conclusory statements, and bald assertions may be identified and set aside, because they do not count toward the plaintiff's goal of demonstrating plausibility of entitlement of relief.

Defendants also raise 12(b)5) grounds, however.  To survive a 12(b)(5) motion, the "plaintiff bears the burden of proving that service was proper".  *Breezley v. Hamilton Cnty.*, 674 F. App'x 502, 505 (6th Cir. 2017).  "Courts may look to record evidence and uncontroverted affidavits in

determining whether plaintiffs have met this burden." *Spencer v. Caracal In'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021).

Because of the Plaintiffs' plethora of desperate pleadings in the Montgomery County Chancery Court and their failure to comply with the Rules of Procedure, many documents were filed both before and after the filing of the complaint. In general, on motions to dismiss, the Court is not to consider matters outside of the pleadings. However, there are categories of documents, including "exhibits attached to the complaint" and "public records" that can be considered on a motion to dismiss without conversion to summary judgment provided that the documents are "central to the claims". *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017); *Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) (discussing exhibits and public records). A document is considered "central—or 'integral'—to the complaint where the plaintiff has actual notice of the document and has relied upon the documents in framing the complaint. *Patriot Angels Consulting Corp. v. Veterans of Foreign Wars of the United States*, 2026 WL 625680, at *10 (M.D. Tenn. Mar. 5, 2026) (citations omitted).[1]

### IV. ARGUMENT

**A. Count I- Breach of Contract/Deed of Trust Fails to State a Claim.**

The Plaintiffs have failed to plead the elements of a breach of contract claim. Instead of asserting what specific contract or provision of a contract Defendants breached and which Defendants did what, the Plaintiffs did nothing more than a shotgun approach of generally

---

[1] Defendants do not object to the rulings of the U.S. Bankruptcy Court in the Samuel Gray or Rachel Hinkle Gray bankruptcies nor the Orders of the Montgomery County Chancery Court that were issued by Chancellor Ben Dean prior to removal. The Plaintiffs obviously had knowledge of their Note, the Deed of Trust, and the orders of the U.S. Bankruptcy Court and the Montgomery County Chancery Court. However, much of the Plaintiffs' documentation and filings are nothing more than erroneous conclusions of law and other clearly irrelevant information they likely found on the internet which they thought would help their claim. For purposes of ruling on its Motion to Dismiss, Defendants do not object to the Court's consideration of the party's own admissions in Exhibit B-1, but do reserve all rights with respect to the ability to challenge on the grounds of relevance, authenticity, foundation, and hearsay the attachments to B-1 that are not party admissions.

complaining about everything they could possibly think of that they surmised would reverse the foreclosure. See *Costello v. Mountain Laurel Assurance Co.*, 670 F. Supp. 3d 603,612 (E.D. Tenn. 2023) ("(I)n order to state a claim for breach of contract, a plaintiff must identify and present the actual terms of the contract allegedly breached."; *Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 303 (Tenn. Ct. App. 2020) ("In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach.") (quoting *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287,291 (Tenn. 2011)). Plaintiffs do not point to any deficiency, but claim that "one or more" things were wrong with the foreclosure. Such threadbare, bald assertions, without more, are insufficient to support a breach of contract claim. In fact, every piece of evidence on record supports the fact that the only breach of the Deed of Trust was Plaintiffs' own failure to pay their house note. The representations in the Samuel Gray bankruptcy alone offer undisputed proof that the Plaintiffs were in default of their loan obligation and that a foreclosure was valid. The Plaintiffs admitted from the beginning of their attempts to continue to remain in the home that they received notice of sale, with Rachel Hinkle Gray hand writing on the exhibit that "this was sent certified mail". Indeed, Plaintiffs would not have so fervently sought a loan modification if they had no notice of an impending foreclosure. Their allegation that they received no notice of the postponement is also unpersuasive, as the Chancellor found on the hearing date of March 25, 2026. Plaintiffs have brought forth no evidence to counter the documentary evidence submitted by the foreclosure trustee nor the incorporated affidavit on the substitute trustee's deed attesting that notice was given of both the original sale date and the postponement date. Nothing in the Deed of Trust nor the statutory framework regarding foreclosures requires proof of receipt of notices, nor substantiates any of the other wild theories proposed by the Plaintiffs, such as the necessity of

republishing simply for a postponement.  Furthermore, as will be discussed in detail in a subsequent paragraph, there is nothing in the Deed of Trust nor the statutory framework that requires lenders to indefinitely stay foreclosures so that Plaintiffs can file an unending train of frivolous loan modification applications.  The breach of contract claim is without merit.

### B.  Count II – Declaratory Judgment Fails to State a Claim.

Plaintiffs ask for declaratory judgment, claiming a controversy exists regarding the completed foreclosure sale, but again, unsurprisingly, give no reasons why there is a controversy or why they meet the standard for declaratory judgment.  In order to ask for declaratory judgment in Tennessee, a justiciable controversy must exist, and Plaintiffs can not be used to decide theoretical questions or allay fears as to what may occur in the future.  *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186 (Tenn. 2000).  Because Plaintiffs have not stated a claim for breach of contract, they likewise have no claim to ask for declaratory judgment.  T.C.A. § 35-5-106 demonstrates that completed sales are final despite the lack of notice that Plaintiffs have failed to prove. "Should the officer, or other person making the sale, proceed to sell without pursuing the provisions of this chapter, the sale shall not, on that account, be either void or voidable." *Smith v. Hughes*, 639 S.W.3d 627 at 639, citing *Wells Fargo Bank, N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, at *2 (Tenn. Ct. App. Apr. 24, 2014).  In fact, Tennessee case law regarding foreclosures and T.C.A. § 35-5-106 holds that, though foreclosed borrowers may have causes of action against parties who failed to provide notice in a foreclosure, the remedy is not remaining in the home and setting aside the foreclosure.  See also *Daniels v. Trotter*, E2024-00473-COA-R3-CV (Tenn. Ct. App. Jul. 1, 2025) (holding the statute constitutional even when the foreclosing entity was a municipality acting in a proprietary capacity).  Declaratory judgment fails because the sale is not void or voidable as a

matter of law, even if the Plaintiffs had adequate proof of irregularities in following the foreclosure provisions of the Deed of Trust of the foreclosure statute.

**C. Count III-Injunctive Relief and Count IV-Accounting are Remedies and Not Causes of Action**

Count III asks for the same type of injunctive relief which Plaintiffs have already been denied by the Chancellor of Montgomery County prior to removal. Moreover, Count IV is a request for a remedy that is not a cause of action. See, *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013). Likewise, any sort of injunctive relief should be dismissed if pled as an independent cause of action. See *Lamons v. Chamberlain*, 909 S.W.2d 795, 800 (Tenn. Ct. App. 1993). Furthermore, Plaintiffs brought forth no statutory authority or otherwise for the relief sought in these "Counts". The Court should dismiss Counts III and Count IV.

**D. Count V-Violation of Applicable Federal Servicing Law (If Supported By Facts) Fails to State a Claim.**

The Plaintiffs' Count V is another fishing expedition, as apparent from its title and the addition of the words "if supported by facts". Such an admission demonstrates that the Plaintiffs do not have any facts to support this claim and do not state a claim for a RESPA violation. In fact, the plethora of documents and admissions the Plaintiffs have put into the Court record prior to removal show just the otherwise, that Defendants were compliant with RESPA and Regulation X. The Plaintiffs admit to submitting a loan modification application, and despite the obvious reasons as to why a loan modification would be denied, such as Samuel Gray's Chapter 7 filing, his representation in that bankruptcy of the enormous tax refund he claimed as an asset, and the fact that Rachel Hinkle Gray admitted unemployment to the Chancellor, nevertheless the loan modification was apparently reviewed and denied according to procedure. RESPA and Regulation X are not

mechanisms by which borrowers seriously in default can abuse by submitting a limitless number of applications and expect the foreclosure to be stayed virtually indefinitely.

Once again, Plaintiffs do not point out any specific actions that would violate RESPA nor point out which of the Defendants committed the conduct. As to DMI, none of the generalized complaints made by the Plaintiffs rises to the level of a claim against a servicer. RESPA defines servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan…and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605/(i)(3). Regulation X defines an "error" to include specific types of errors that can trigger a servicer's obligation to respond. See 12 C.F.R. § 1024.35(b). Plaintiffs have alleged no conduct purporting to an error in servicing. On the contrary, their admission of having not made payments for the servicer to receive is openly admitted. Courts routinely dismiss claims purporting to assert a RESPA violation based on matters outside the definition of servicing as defined by RESPA and Regulation X. *Henson v. Bank of Am.*, 935 F.Supp.2d 1128, 1144 (D. Colo. Mar. 25, 2014) (quoting *Harris v. Am. Gen. Fin., Inc.*, 2005 WL 1593673, at * 3 (D. Kan. July 6, 2005). Courts also have routinely not allowed RESPA claims to reverse or set aside foreclosures. *Biles v. Roby*, No. W2016-02139-COA-R3-CV, at *6 (Tenn. Ct. App. Aug. 11, 2017). In fact, one Court within the Sixth Circuit has simply stated that "there is no provision found in RESPA under which Plaintiff can seek to have foreclosure proceedings nullified". *Hagan v. Citimortgage, Inc.*, No. 1:15-CV-454, at *5 (W.D. Mich. Oct. 27, 2016).

An alleged irregularity in the loan modification process does not constitute an irregularity in the foreclosure proceeding. *Campbell v. Nationstar Mortgage*, 611 F. App'x 288, 294 (6th Cir. 2015). Thus Plaintiffs have no claim against the foreclosure trustee or their agents or employees for

Memorandum of Law in Support of MTD          Page 10
25-000043-391

a RESPA claim, but the same is also true for Ameris, because there is no duty of good faith imposed on a lender to entertain a loss mitigation application.  Thus, lenders do not have a duty under RESPA or any other authority by which they have to "offer" or "entertain a loan modification request" or otherwise "assist [Plaintiffs] in preventing foreclosure' where a contract does not expressly create any such obligation." *Kinard v. Nationstar Mortg. LLC*, 572 S.W.3d 197, 206 (Tenn. Ct. App. 2018) (quoting *Pugh v. Bank of Am.,* No. 13-2020, 2013 WL 3349649, at \*12 (W.D. Tenn. July 2, 2013)).

Conversations that borrowers may have with lenders to attempt to get loan modifications do not alter the well settled law of the Statute of Frauds.  A promise to complete a loan modification review process and, more importantly, postpone the foreclosure proceedings, would constitute modifying the "clear and unambiguous" literal terms of the Deed of Trust which provide Ameris with clear rights to accelerate the debt and proceed to foreclosure in the case of a default.  See *Dick Broadcasting Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 666 (Tenn. 2013).  Under the Statute of Frauds codified at T.C.A. § 29-2-101, then, the record is absent of any written, memorialized agreement between the parties that Ameris would continue to allow the Grays to submit loan modification applications one right after the other and postpone the foreclosure. *Jackson v. Citimortgage, Inc.*, No. W2016-00701-COA-R3-CV, at \*9-10 (Tenn. Ct. App. May 31, 2017).  Count V fails as to all Defendants.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' Motion, and dismiss all claims against all Defendants in this matter, with prejudice, and award Defendants all other relief that it deems just under T.C.A. § 20-12-119(c).

Submitted By:
*/s/ Jason R. Nabors*
Jason R. Nabors, BPR# 037937
Mackie Wolf Zientz & Mann, P.C.
725 Cool Springs Blvd., Ste. 140
Franklin, TN  37067
615-238-3618
jnabors@mwzmlaw.com
*Attorneys for Defendants Ameris
Bank; Dovenmuehle Mortgage, Inc.;
Andrew Jensen; and Mackie Wolf
Zientz & Mann, P.C.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2026, a true and correct copy of the foregoing was delivered via e-mail or U.S. Mail to the following.

Rachel M. Hinkle Gray
954 Terrace Creek Lane
Clarksville, TN 37040

Samuel Gray
954 Terrace Creek Lane
Clarksville, TN  37040

Henry E. Hildebrand, III
1800 Church Street Ste. 200
Nashville, TN 37203

*/s/ Jason R. Nabors*
Jason R. Nabors